## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| **ROBERT DAVIS,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:24-cv-00015-O-BP** |
| | § | |
| **BRANDON LOGAN,** *et al.***,** | § | |
| | § | |
| **Defendants.** | § | |

## <u>FINDINGS, CONCLUSIONS, AND RECOMMENDATION</u>
## <u>OF THE UNITED STATES MAGISTRATE JUDGE</u>

Before the Court are the three Motions to Strike filed by Plaintiff Robert Davis ("Davis"), ECF Nos. 22, 23, and 24, and his "*Roell* Notice," ECF No. 26; Defendants' Response to the Motions, ECF No. 31; and Defendants' Motion for Judgment on the Pleadings and Brief in Support and Renewed Motion for Judgment on the Pleadings, ECF Nos. 34 and 36. Although the Court ordered Davis to file a response to the Defendants' Motion for Judgment on the Pleadings (ECF No. 35), he did not do so.  After considering the pleadings and applicable legal authorities, the undersigned **RECOMMENDS** that United States District Judge Reed O'Connor **DENY** Davis' three Motions to Strike (ECF Nos. 22, 23, 24), **GRANT in PART** Defendants' Motion for Judgment on the Pleadings (ECF No. 34) as to Davis' claim for deliberate indifference to serious medical needs and harassment, **STAY** Davis' claims arising from his arrest until the underlying state criminal charges resolve, and **DISMISS WITHOUT PREJUDICE** Davis' challenges to the constitutionality of the Texas Penal Code and the Texas Health and Safety Code, for deprivation of his right to access the state court, and his claims under the Texas Open Records Act.

## I.    BACKGROUND

In his amended complaint, Davis asserts wide-ranging claims against Wise County, Texas ("the County"), County Sheriff Lane Akin ("Akin"), Jail Administrator Daniel Armstrong ("Armstrong"), Captain Wes Wallace ("Wallace"), Deputies Brandon Logan ("Logan") and William Snyder ("Snyder"), and a County jailer whose name is unknown currently ("the Jailer"), ECF No. 1. Taken together, Davis seeks over $3 million in damages from the Defendants. *Id*.

The case arose on January 5, 2023, when sheriff's deputies responded to a welfare check at Davis' home concerning his adult son, Shannon. ECF No. 6 at 16. In his initial conversation with Logan, Davis became upset and "vented his frustration" by "shaking the handrail" and "slamming the door frame on his front door with his fist." *Id*. at 18-19. Following this interaction, deputies arrested Davis and later charged him with "interference" and resisting arrest. *Id*. at 45. Davis spent one night in jail, was released on bond, and returned home the next day. ECF No. 34 at 5.

Davis alleges that Logan and Snyder used excessive force against him during the "warrantless arrest." ECF No. 6 at 17. He claims that the County, Akin, and Wallace are liable for "failure of proper training," and Akin, Wallace, Snyder, and Logan are liable for "failure of intervention to prevent or mitigate the unnecessarily forceful arrest." *Id*. He also asserts that the County, Akin, Wallace, Snyder, and Logan conspired "to violate [his] rights regarding excessive force in the arrest." *Id*.

Second, Davis claims that Armstrong and the Jailer denied him "proper medical treatment during custody for the injuries sustained during the arrest and caused by the incident." *Id*. He also claims that Akin and Armstrong failed to intervene "to prevent denial of proper medical

treatment." *Id*. at 18. Finally, he asserts that the County, Akin, Armstrong, and the Jailer conspired "to violate [his] rights regarding denial of proper medical treatment." *Id*.

Third, Davis claims that the Jailer and Armstrong harassed him by "actual incarceration" and "assignment of incarceration" in "[a] 'padded'('danger'/'dangerous') cell" and "via meal presentation without utensil(s)." *Id*. Fourth, Davis alleges that Logan and Snyder assaulted and battered him and that Logan intentionally inflicted emotional distress in "threatening to shoot Shannon, an eye-witness to the unnecessarily forceful arrest." *Id*. at 18-19.

Fifth, Davis alleges that the Jailer and Armstrong denied him "access to the state court at the magistration phase" and that the County, Akin, and Wallace failed to provide "proper training regarding access to the state court system." *Id*. Davis also claims that the County, Akin, Wallace, Armstrong, and the Jailer for conspired "to violate rights regarding denial of access to the state court at the magistration phase." *Id*.

Sixth, Davis claims that the County and Akin violated the Texas Open Records Act by not responding to his requests and giving "[s]omething like seven or eight non-responses." *Id*.

Finally, Davis challenges certain Texas statutes. He asserts that Penal Code §§ 38.15(a)(1) and (a)(7) are unconstitutional "as applied" to this case. *Id*. at 20. His lengthy challenge is somewhat unclear but appears to question the legitimacy of his arrest and subsequent criminal charges. Davis also challenges certain provisions of the Health and Safety Code relating to mental health. *Id*. at 12. These claims address the mental health episodes and concerns of his son, Shannon. *Id*. Davis objects that peace officers are not "mental health professionals," but they conduct wellness checks and serve as first responders to calls involving mental health issues. *Id*.

3

## II.    LEGAL STANDARD

### A.    Motions to Strike under Rule 12(f)

A motion to strike allows a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Regarding motions to strike, "[t]he court may act: (1) on its own; or (2) on motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading." *Id*. Generally, courts view motions to strike "with disfavor" and grant them "only when the pleading to be stricken has no possible relation to the controversy." *Sec. and Exch. Comm'n v. Faulkner*, No. 3:16-cv-1735-D, 2019 WL 2515000, at *4 (N.D. Tex. June 18, 2019) (citation omitted). "Rule 7(a) provides a list of permitted 'pleadings' that determines what constitutes a pleading that is subject to being stricken under Rule 12(f)." *Id*. at *3. Those pleadings include a complaint; third-party complaint; answer to a complaint, counterclaim, crossclaim, or third-party complaint; and "if the court orders one, a reply to an answer." Fed. R. Civ. P. 7(a).

### B.    Motion for Judgment on the Pleadings under Rule 12(c)

"A motion for judgment on the pleadings under Rule 12(c) is subject to the same standard as a motion to dismiss under Rule 12(b)(6)." *Robinson v. Midland Cnty., Tex.*, 80 F.4th 704, 709 (5th Cir. 2023). Rule 12(b)(6) permits dismissal of complaints that fail to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In considering a Rule 12(b)(6) motion, courts must "take all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff ... and ask whether the pleadings contain 'enough facts to state a claim to relief that is plausible on its face.'" *Yumilicious Franchise, LLC v. Barrie*, 819 F.3d 170, 174 (5th Cir. 2016) (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

    **C.**    *Heck* **Doctrine**

    The preclusive doctrine outlined in *Heck v. Humphrey*, 512 U.S. 477 (1994) and its progeny prohibits litigating cases where success on a claim would "necessarily require the plaintiff to prove the unlawfulness of his conviction or confinement." *Id.* at 486-87. Thus, *Heck* precludes a civil action where "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." *Hainze v. Richards*, 207 F.3d 795, 798 (5th Cir. 2000); *see Connors v. Graves*, 538 F.3d 373, 377 (5th Cir. 2008) (dismissing under *Heck* where claimant "could not prevail . . . without undermining the validity of his criminal convictions"). This "favorable termination rule" is an absolute bar to litigation "unless the plaintiff demonstrates that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus." *DeLeon v. City of Corpus Christi*, 488 F.3d 649, 652 (5th Cir. 2007). "The Court should dismiss claims to which the *Heck* bar applies with prejudice, subject to the plaintiff's right to reassert those claims if any of the conditions under *Heck* are met." *Johnson v. McElveen*, 101 F.3d 423, 424 (5th Cir. 1996) (per curiam).

    However, "*Heck* does not extend to cases where a plaintiff files a civil rights action challenging his arrest before any conviction." *Blakely v. Andrade*, 360 F. Supp. 3d 453, 473–74 (N.D. Tex. 2019); *citing Wallace v. Kato*, 549 U.S. 384, 393–94 (2007); *see also DeLeon,* 488 F.3d at 655 (confirming that *Wallace* did not extend *Heck's* application to pending criminal matters). Prior to a conviction "it is simply premature to determine whether or not [Plaintiff's] claims are barred under *Heck*." *Mackey v. Dickson*, 47 F.3d 744, 746 (5th Cir. 1995). Thus,

> it is within the power of the district court, and in accord with common practice, to stay the civil action until the criminal case or likelihood of a criminal case is ended…. If the plaintiff is ultimately convicted, and if the stayed civil suit would impugn that conviction, *Heck* will require dismissal; otherwise, the civil action will proceed, absent some other bar to suit.

*Wallace*, 549 U.S. at 393-94.

### D.    *Pro Se* Plaintiffs

A *pro se* plaintiff's pleadings are liberally construed. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A *pro se* complaint, "'however inartfully pleaded,' must be held to 'less stringent standards than formal pleadings drafted by lawyers....'" *Id.* (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). However, "even a liberally-construed *pro se* . . . complaint must set forth facts giving rise to a claim on which relief may be granted." *Levitt v. Univ. of Tex. at El Paso*, 847 F.2d 221, 224 (5th Cir. 1988) (citing *Bounds v. Smith*, 430 U.S. 817, 825-26 (1977)). Thus, a court inquires "whether within the universe of theoretically provable facts there exists a set which can support a cause of action under [the] complaint, indulgently read." *Covington v. Cole*, 528 F.2d 1365, 1370 (5th Cir. 1976).

### E.    Standing

"Federal courts are courts of limited jurisdiction" that "possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (internal citations omitted). Accordingly, "[a] case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998) (quoting *Nowak v. Ironworkers Loc. 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir. 1996)). Any dismissal for lack of subject matter jurisdiction "should be made without prejudice." *Mitchell v. Bailey*, 982 F.3d 937, 944 (5th Cir. 2020).

"Lack of standing is a defect in subject matter jurisdiction." *Reyes v. N. Tex. Tollway Auth.*, 830 F. Supp. 2d 194, 201 (N.D. Tex. 2011) (collecting cases). Thus, federal courts must raise the issue *sua sponte* where necessary. *Ford v. NYLCare Health Plans of Gulf Coast, Inc.*, 301 F.3d 329, 331-32 (5th Cir. 2002). The plaintiff bears the burden of establishing standing. *La. State by & through La. Dep't of Wildlife & Fisheries v. Nat'l Oceanic & Atmospheric Admin.*, 70 F.4th 872, 878 (5th Cir. 2023). To establish standing, a plaintiff must show (1) an actual or imminent, and concrete and particularized injury-in-fact; (2) fairly traceable to the defendant's conduct; (3) that is redressable. *Fla. Dep't of Ins., v. Chase Bank of Tex. Nat. Ass'n*, 274 F.3d 924, 928-29 (5th Cir. 2001) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss [courts] presume that general allegations embrace those specific facts that are necessary to support the claim." *Lujan*, 504 U.S. at 561-62.

**F.      Dismissal With or Without Prejudice**

There exists a "well-established policy that the plaintiff be given every opportunity to state a claim." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). As a result, courts generally allow plaintiffs at least one opportunity to amend their pleadings. *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329-30 (2002). However, if the Court determines that a plaintiff has pleaded his best case, it does not err in dismissing a *pro se* complaint with prejudice. *Jones v. Greninger*, 188 F.3d 322, 326-27 (5th Cir. 1999) (citing *Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998); *Jacquez v. Procunier*, 801 F.2d 789, 792 (5th Cir. 1986)). Likewise, a court may dismiss a complaint with prejudice, thus foreclosing the plaintiff's opportunity to amend, whenever amendment of the pleadings would be futile. *See Stem v. Gomez*, 813 F.3d 205, 215-16 (5th Cir. 2016). Likewise, a court may dismiss an action with prejudice without affording plaintiff

the chance to amend where the court invited the plaintiff to respond to the motion to dismiss, but she did not do so. *Rodriguez v. United States*, 66 F.3d 95, 97 (5th Cir. 1995).

## III.    ANALYSIS

### A.    Davis' challenges to the undersigned's pretrial management are unavailing.

Davis' Motions to Strike, along with his "*Roell* Notice," question the undersigned's authority as a magistrate judge under 28 U.S.C. § 636. Davis asks the Court to "strike (A) any and all portions of §§ 636(a), (b), and (c), with a particular focus on (b)(1)(A) and (b)(1)(B), that in any way purport to justify compelling consent to non-judicial decision-making…over Davis' overt, 'at filing,' objection." ECF No. 22 at 6. He moves the Court to "strike (B) the standing orders (which striking is tantamount is a 'withdrawal of referral') and related Local Rules purporting to justify referral 'at filing' of 'civil cases.'" ECF No. 23 at 5. Finally, he urges the Court to "strike (C) all purported decision-making filed into this *judicial* Record by the un-consented-to arbiter, i.e., the 'magistrate.'" ECF No. 24 at 5.

The Court should deny Davis' Motions because they lack merit and are not procedurally proper. Judge O'Connor preliminarily assigned this case to the undersigned under the Court's Special Order 3. ECF No. 2. That Order specifically assigns *pro se* civil cases in which Judge O'Connor is the district judge to the magistrate judge that was preliminarily assigned. *See* Special Order No. 3-251. The Order assigns such case to a magistrate judge "for decisions as to non-dispositive matters and for findings and recommendations as to dispositive matters." *Id.* The law permits such a referral. *See* 28 U.S.C. § 636(b)(1). Despite Davis' objections, such a referral does not require the consent of the parties. *See Newsome v. EEOC*, 301 F.3d 227, 230 (5th Cir. 2002).

In support of his Motions, Davis cites and relies heavily on *Roell v. Withrow*, 538 U.S. 580 (2003). That case primarily considered whether a party's conduct during litigation could be

deemed as consent to a magistrate judge's jurisdiction to enter a dispositive order. *Id*. However, the magistrate judge in *Roell* presided over the entire case, eventually entering a final judgment. *Id*. Here, there is no suggestion that Davis has consented to the undersigned entering dispositive orders. When the parties do not consent to a magistrate judge ruling on dispositive matters, the magistrate judge "properly…enters a recommendation on a [dispositive matter] despite a [party's] failure to consent to" the magistrate judge. *McFaul v. Valenzuela*, 684 F.3d 564, 579 (5th Cir. 2012). "[T]he common practice of having magistrate judges submit proposed findings to district judges is lawful." *Perkins v. Brewster*, 843 F. App'x 637, 638 (5th Cir. 2021). The parties have the right to appeal such findings and recommendations. 28 U.S.C. § 636(b)(1)(C). Thus, the undersigned has authority to enter orders on non-dispositive matters in this case and to make findings and recommendations to Judge O'Connor as to dispositive matters.

Moreover, even if the law permitted Davis' challenge to the undersigned's authority, a motion to strike is not the appropriate procedural method to make that challenge under Rule 12(f). Davis' Motions do not reference any pleading listed in Rule 7(a), and provisions of the United States Code are not pleadings against which a motion to strike may be brought. *See* Fed. R. Civ. P. 7(a); *see also* Fed. R. Civ. P. 12(f). For this independent reason, Davis' Motions are not proper.

Accordingly, Judge O'Connor should deny Davis' Motions to Strike.

### B.    The Court should stay Davis' claims arising from his arrest under the *Heck* Doctrine until his criminal charges resolve.

Defendants move for judgment on the pleadings under *Heck* because Davis' criminal charges "have not been dismissed." ECF No. at 34 at 6. Davis, however, asserts that those criminal charges have been dismissed. ECF No. 6 at 49. The Court takes judicial notice that Davis was indicted on state charges after the state judge granted a habeas corpus petition in March 2024, and these criminal charges are still pending. Wise County All Courts/Sheriff's Department Records,

https://jail.co.wise.tx.us/PublicAccess/Search.aspx?ID=100 (last accessed October 7, 2024); *see* ECF No. 8 at Ex. 10; *see also Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007) (holding that courts may take judicial notice of matters of public record); *see also* Fed. R. Evid. R. 201.

Davis admits that he was arrested and charged on multiple counts including resisting arrest and "interference." ECF No. 6 at 20. Because Davis' claims of excessive force, failure to train, failure to intervene, and conspiracy in connection with his arrest concern "rulings that will likely be made" in his pending criminal trial, *Heck* would bar his claims arising from his arrest if he is convicted. *Blakely*, 360 F.Supp.3d at 474 (quoting *Wallace*, 549 U.S. at 393-94); *see Whatley v. Coffin*, 496 F. App'x 414, 416 (5th Cir. 2012) (finding that *Heck* barred claims against the city, chief of police, and police officers for excessive force where they would imply the invalidity of a conviction for assault of a public servant). Thus, at this point, "it is simply premature to determine whether" *Heck* bars Davis' claims regarding his arrest, and the appropriate action is to stay such proceedings, "until [Davis'] related pending criminal case[s] [are] resolved." *Blakely*, 369 F. Supp. 3d at 475.

### C.    The Court should also stay Davis' state law claims until his criminal charges resolve and it is clear whether *Heck* bars his federal law claims.

Davis claims that Logan and Snyder assaulted and battered him and that Logan intentionally inflicted emotional distress on him during the arrest. ECF No. 6 at 18-19. Davis asserts that the Court has supplemental jurisdiction over these state law claims because they "arise from the same facts as the federal question claims." *Id*. at 16. Federal courts "have supplemental jurisdiction over all other claims that are so related to claims in the action within [its] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). This statute allows a court to decline to exercise supplemental jurisdiction over a state law claim in certain circumstances, including when "the

district court has dismissed all claims over which it has original jurisdiction" or "in exceptional circumstances" where "there are other compelling reasons for declining jurisdiction." *Id*. at § 1367(c)(3)-(4). In determining whether to retain jurisdiction over the state law claims, the court considers the provisions of § 1367(c) as well as issues of judicial economy, convenience, fairness, and comity. *Jones v. Adam's Mark Hotel*, 840 F. Supp. 66, 69 (S.D. Tex. 1993).

Davis' claims for assault and battery and intentional infliction of emotional distress arise out of his arrest, the same event at issue in his federal question claims. Thus, the state law and federal law claims arise out of a common nucleus of operative facts and form part of the same case or controversy. Accordingly, the Court would have supplemental jurisdiction over Davis' state law claims if *Heck* did not bar his federal question claims surrounding his arrest. Because it is too early to determine whether *Heck* bar his federal claims, the Court should not dismiss Davis' assault and battery and intentional infliction of emotion distress claims at this time. Where "[a]ll federal claims are not [yet] subject to dismissal," "the proceedings are subject to stay as to both the remaining federal and state law claims." *Blakely*, 360 F.Supp.3d at 491 n.34. Accordingly, the undersigned recommends that Judge O'Connor stay these state law claims until Davis' criminal charges resolve and it is clear whether *Heck* bars his federal law claims.

**D.   Davis lacks standing to challenge the Texas Penal Code and Texas Health and Safety Code.**

**1.   Davis has not shown that his challenges to the Penal Code and Health and Safety Code are redressable.**

Davis challenges §§ 38.14(a)(1) and (a)(7) of the Penal Code, alleging that his arrest was only made because those provisions unconstitutionally authorize "peace officers, who are not 'physicians' and who are not 'non-physician mental health professionals'" to "gate-keep[] for (emergency) mental health evaluations and diagnoses in the field." ECF No. 6 at 25. Davis further

requests that "[m]ental health 'welfare checks' shall, from this day and forever more, be conducted by qualified medical professionals." *Id*. at 39.

While Davis has asserted an injury in fact due to his arrest, he has not sufficiently alleged facts support the second and third standing requirements. To show the second requirement, causation, a plaintiff's injuries cannot be "self-inflicted." *Ass'n of Cmty. Orgs. for Reform Now v. Fowler*, 178 F.3d 350, 358 (5th Cir. 1999). Here, while Logan and Snyder arrived at Davis' home for to the wellness check under the authority of the alleged unconstitutional provisions of the Texas Penal Code, they arrested Davis for allegedly resisting his own arrest. This had nothing to do with the initial welfare check, but instead arose from Davis' conduct once Logan and Snyder arrived. Thus, Davis has not shown that the allegedly unconstitutional provisions caused his arrest, but instead it appears that Davis caused his arrest.

Moreover, Davis has not sufficiently alleged the third element of standing, redressability, by showing "a substantial likelihood that the requested relief will remedy the alleged injury-in-fact*." El Paso Cnty. v. Trump*, 982 F.3d 332, 341 (5th Cir. 2020) (citing *Vt. Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 771 (2000)). Davis seeks to change the Penal Code to allow only mental health professionals to conduct mental health related welfare checks. However, Davis has not shown that this remedy would redress his injury. Even if the Court declared the challenged provisions of the Texas Penal Code to be unconstitutional, this would not affect Davis' arrest and subsequent criminal charges. Because the relief Davis requests would not remedy his alleged injury, he does not have standing to challenge the Penal Code as applied to his case.

Davis' challenge of the Health and Safety Code is similarly deficient. Davis challenges the Health and Safety Code both facially and applied because "peace officers" are the first responders for calls involving a mental health issue. ECF No. 12. However, Davis does not allege a "concrete

and particularized" injury pertaining to the Health and Safety Code specifically. *Lujan*, 504 U.S. at 560-61. Rather, this claim includes Davis' lengthy criticism of the "present protocol" but does not assert how these policies directly injure or affect him. ECF No. 6 at 12. Even if Davis meant to allege that the Health and Safety Code was the moving force behind his arrest, again there is no causation. Davis' own actions led to his arrest, not the current mental health protocol. Additionally, Davis has not shown that a ruling by the Court would redress any injuries he incurred. Thus, Davis has not sufficiently shown that he has standing to challenge the Health and Safety Code.

Accordingly, Davis lacks standing to challenge the constitutionality of the Texas Penal Code and the Texas Health and Safety Code, and the Court should dismiss those claims without prejudice.

### 2.    Even if Davis did have proper standing, he cannot challenge the Texas Health and Safety Code on behalf of his son.

"In all courts of the United States the parties may plead and conduct their own cases personally or by counsel." 28 U.S.C. § 1654. However, a party "cannot be represented by a nonlawyer," because § 1654 "does not include the phrase, 'or by a nonlawyer.'" *Raskin ex rel. JD v. Dall. Indep. Sch. Dist.*, 69 F.4th 280, 283 (5th Cir. 2023) (quoting *Gonzales v. Wyatt*, 157 F.3d 1016, 1021 (5th Cir. 1998)). The Court should dismiss any claims that a *pro se* plaintiff asserts based on the claims of his children. Except for certain types of cases where a statute permits parents to represent their children *pro se*, the law generally prohibits them from doing so. *Raskin,* 69 F.4th at 286. It is plaintiff's burden to "establish that under § 1654, federal or state law authorizes h[im] to proceed *pro se* on behalf of h[is] children." *Id.* at 287.

Davis challenges the constitutionality of "the present Mental Health Code protocol…facially and as applied" on behalf of his son, Shannon. ECF No. 6 at 12. Davis urges reform of the Texas Health and Safety Code and the current protocol for handling mental health

situations, such as the many encounters with Davis' son. *Id.* However, Davis pleads no facts to show that he is a lawyer. Further, Davis has not met his burden of establishing "that under § 1654, federal or state law authorizes [him to proceed *pro se*] on behalf of [his son]." *Raskin,* 69 F.4th at 287. Consequently, Judge O'Connor should dismiss all claims that Davis brings as next friend of his child or that Davis asserts directly as his representative because Davis cannot proceed *pro se* in this case on behalf of anyone other than himself.

      **E.**      **Davis has not alleged sufficient facts to state a plausible claim for relief regarding his brief incarceration.**

            **1.**      **Davis has not shown that he was denied proper medical treatment, nor that the Jailer and Armstrong acted with deliberate indifference.**

Davis alleges denial of medical treatment and harassment against the Jailer and Armstrong for the conditions of his one-night stay in jail. ECF No. 6 at 63. He argues that the Jailer and Armstrong violated his Eighth Amendment rights and acted with deliberate indifference towards his needs. *Id.*

At the outset, the Court notes that

> since pretrial detainees and convicted state prisoners are similarly restricted in their ability to fend for themselves, the State owes a duty to both groups that effectively confers upon them a set of constitutional rights that fall under the Court's rubric of 'basic human needs.' Pretrial detainees and convicted prisoners, however, look to different constitutional provisions for their respective rights to basic needs such as medical care and safety.

*Hare v. City of Corinth, Miss.*, 74 F.3d 633, 639 (5th Cir. 1996). While the constitutional rights of convicted prisoners arise from the Eighth Amendment, those of a pretrial detainee "flow from both the procedural and substantive due process guarantees of the Fourteenth Amendment." *Id.* During his detention, Davis was a pretrial detainee. Although he asserts claims under the Eighth Amendment, his claims arise out of the Fourteenth Amendment, and the Court will liberally construe them as such.

Davis states that he had "very high blood pressure," that he told this to the Jailer, and the Jailer in turn told a nurse who gave him "Clonadine pills." *Id*. at 63-64. Davis admits that these pills did help to reduce his blood pressure, but he believes that he should have been sent to a medical facility "for EKG studies." *Id*. at 64. Davis also asserts that he had an ankle injury that the Jailer photographed at Davis' request, but Davis believes he should have received an ice pack and had an X-ray taken. *Id*. at 66. Finally, Davis asserts that his kidneys were injured during the arrest and believes that he should have had tests done, such as a "dye-based test[]" to "determine the extent of injury to [his] internal organ." *Id*. at 66-67. Davis argues that this conduct by the Jailer amounts to denial of medical treatment, deliberate indifference, and intentional infliction of emotional distress. *Id*. at 68.

However, as Defendants argue, "[d]eliberate indifference is an extremely high standard to meet." *Domino v. Tex. Dep't of Crim. Just.*, 239 F.3d 752, 756 (5th Cir. 2001). A prison official acts with deliberate indifference "only if he knows that inmates face a substantial risk of serious bodily harm and he disregards that risk by failing to take reasonable measures to abate it*." Farmer v. Brennan*, 511 U.S. 825, 847 (1994). Further, as it applies to Davis' claims, the Fifth Circuit has held that "that a state jail official's constitutional liability to pretrial detainees for episodic acts or omissions should be measured by a standard of subjective deliberate indifference as enunciated by the Supreme Court in *Farmer*." *Hare*, 74 F.3d at 643.

Davis has asserted no facts to show that either the Jailer or Armstrong knew that he faced a substantial risk of serious bodily harm and failed to act reasonably to abate such risk. Further, Davis received medical attention and care from both the Jailer and a nurse while in custody and went home the next day. Davis' assertions are not sufficient to show that the Jailer or Armstrong meet the subjective deliberate indifference standard in *Farmer*.

15

Because Davis has not alleged a constitutional injury attributable to the Jailer and Armstrong, he has stated a claim that Akin and Armstrong failed to intervene in the alleged denial of medical treatment. The same can be said regarding Davis' claims against the County, Akin, Armstrong, and the Jailer for conspiracy regarding the denial of proper medical treatment. Since Davis has not alleged any constitutional violation, there can be no conspiracy surrounding such a violation.

As to Davis' claim of intentional infliction of emotional distress, the Fifth Circuit has held that to make such a claim under Texas law, "the plaintiff must also demonstrate that there is no alternative cause of action available to address the alleged misconduct." *Stelly v. Duriso*, 982 F.3d 403, 408 (5th Cir. 2020) (citing *Hoffmann-La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 447 (Tex. 2004)). The court further held that "[intentional infliction of emotional distress] is a 'gap-filler' tort reserved for 'those rare instances in which a defendant intentionally inflicts severe emotional distress in a manner so unusual that the victim has no other recognized theory of redress.'" *Stelly*, 982 F.3d at 408 (quoting *Zeltwanger*, 144 S.W.3d at 447). Here, Davis claims many other recognized theories of redress, including deliberate indifference. ECF No. 6 at 68. Thus, intentional infliction of emotional distress is not legally available in the present case. Even if it were, Davis has alleged no facts to support an assertion that any of the Defendants "intentionally and recklessly engaged in extreme or outrageous conduct," as Texas law requires to recover for intentional infliction of emotional distress. *Stelly*, 982 F.3d at 408. Davis only has claimed that he should have received certain medical care such as an ice pack or an x-ray but asserts to no extreme or outrageous conduct. ECF No. 6 at 66.

Accordingly, Judge O'Connor should dismiss all of Davis' claims asserting denial of medical treatment.

### 2. Davis' claims for harassment do not state a claim upon which relief can be granted.

Davis also claims that Armstrong and the Jailer harassed him by placing him in a "padded cell" and serving him a meal without providing eating utensils or a napkin. ECF No. 6. Davis alleges that padded cells exist for "the custody of those deemed to be or to cause a genuine, material threat of serious bodily injury to others or to themselves." *Id*. at 76. However, Davis admits that the Jailer explained that since Davis was a retired law enforcement officer, placement in a padded cell was for his own safety. *Id*.

When a plaintiff alleges unconstitutional conditions of confinement, he must show that the condition has no reasonable relationship to a legitimate governmental interest. *See Duvall v. Dall. Cnty.*, 631 F.3d 203, 207 (5th Cir. 2011). The Jailer offered a reasonable explanation for Davis' placement in a separate cell, and Davis offered no facts to contradict this explanation of the need to protect him.

Davis further alleges that he was placed in a "dangerous cell," and served a meal without eating utensils or a napkin. *Id*. However, he later admitted that he "was allowed to eat, with a spoon, under supervision of a Deputy." *Id*. Detainment "requires that the State provide for inmates' basic human needs." *Shepherd v. Dall. Cnty.*, 591 F.3d 445, 453 (5th Cir. 2009). Basic human needs generally include "food, clothing, shelter, medical care, and reasonable safety." *Hare*, 74 F.3d at 639. Davis has not alleged sufficient facts to show that the Jailer and Armstrong deprived him of any basic human needs. Jail staff served Davis a meal, and after request, provided him a spoon with which to eat the meal. ECF No. 6 at 18. While a Deputy watched him eat, the jail's staff did not deprive him of any basic human needs.

Accordingly, Judge O'Connor should dismiss Davis' claims arising from his assignment and placement in a padded cell and his claims relating to his meal presentation.

**F.    Davis' claim for denial of access to the state court fails to sufficiently state a claim upon which relief can be granted.**

Davis asserts that he was denied access to the state court "at the magistration phase," by the Jailer and Armstrong. ECF No. 6 at 85. Davis alleges that he had no access to his computer and printer in custody, and that the Jailer denied Davis' request for a pen and paper to "document his request for the Examining Trial." *Id*. However, while prisoners have a constitutional right of access to the courts, Davis was only in custody from January 5 to January 6. Once he was released, he had ample opportunity to use his own resources to access the state court. Further, Davis' mere assertion that "[the Jailer] never provided [the pen and paper]," is insufficient to show that he was "denied the opportunity to present to the judiciary allegations concerning violations of fundamental constitutional rights." ECF No. 6 at 85; *Wolff v. McDonnell*, 418 U.S. 539, 579 (1974). Additionally, Davis does not state any facts to show that a one-day denial of a computer, printer, paper, and a pen harmed him in any way.

Further, the Court should dismiss Davis' claims for failure to train, failure to intervene, and conspiracy relating to the denial of access to state court because there was no underlying constitutional violation for which the defendants could be held liable. Because Davis has not alleged a constitutional injury, he has not stated to state a claim that the County, Akin, and Wallace were the "moving force behind [the]violation of his constitutional rights." *Bustos v. Martini Club Inc.*, 599 F.3d 458, 467 (5th Cir. 2010). Likewise, he has not stated facts to show that the County, Akin, Wallace, Armstrong, and the Jailer for conspired to deny him access to state court. Since Davis has not alleged any constitutional violation, there can be no conspiracy surrounding such a violation.

Accordingly, the Court should dismiss Davis' claims of denial of access to the state court, failure of training regarding such access, and conspiracy regarding such access for failure to state a claim upon which relief can be granted.

### G.     The Texas Open Records Act is not actionable in this Court.

Davis claims that Akin and the County violated the Open Records Act in several instances. ECF No. 6. He contends that he made multiple requests for information including body camera footage and audio from his arrest, records regarding the present location of a weapon that sheriff's deputies seized from his son, and records "of the magistration process." ECF No. 6 at 87-88. Davis further alleges that the Sheriff's Department responded to his request for body cam footage, stating that the information is unavailable because it is still under investigation, the "JP court" has responded that records of the magistration process are in the possession of the Sheriff's Department, and no records can be found regarding the weapon. *Id*.

Davis' claims are not actionable in this Court, though a person who has requested information from a public entity may file a suit for writ of mandamus in state court to compel the governmental entity to make the requested information available. *Perry v. Kaufman Cnty.*, No. 3:98-cv-2870L, 2000 WL 1372832, at *11 (N.D. Tex. Sept. 22, 2000); *see also*, Tex. Gov't Code § 552.321 (Vernon Supp. 2024). "Where the requestor fails to seek relief by filing a suit of writ of mandamus in the appropriate state court, § 552.321, the claim is improper and subject to dismissal." *Jackson v. Tex. S. Univ.*, No. CIV.A. H-11-4092, 2013 WL 593412, at *6 (S.D. Tex. Feb. 14, 2013); *see Moore v. Collins*, 897 S.W.2d 496, 500 (Tex. App.—Houston [1st Dist.] 1995, no writ) (noting that "when officials do not comply with these provisions of the Government code, the requestor's relief is limited to the statutory remedy of filing suit for a 'writ of mandamus' or seeking declaratory relief."); *see also Jenkins v. Tarrant Cnty. Sheriff's Off.*, No. 4:21-CV-0910-

O, 2022 WL 426593, at *5 (N.D. Tex. Feb. 11, 2022), *aff'd*, No. 22-10244, 2023 WL 5665774 (5th Cir. Sept. 1, 2023) (noting that "Section 552.321(b) of the Act waives sovereign immunity in state court only."). Because Davis did not file a suit in the proper state court seeking a writ of mandamus in accordance with the requirements of the Texas Government Code, his Texas Open Records Act claims are not properly before the Court.

Accordingly, the undersigned recommends that Judge O'Connor dismiss Davis' claims against Akin and the County for Texas Open Records Act Violations without prejudice to Davis' right to pursue those claims in an appropriate state court.

## IV.    CONCLUSION

While courts generally allow plaintiffs at least one opportunity to amend an insufficient pleading, the undersigned finds that Judge O'Connor should dismiss Davis' claims for deliberate indifference to serious medical needs and harassment without granting him leave to amend. *Great Plains Tr. Co.*, 313 F.3d at 329. Davis has amended his pleading once already, resulting in an 89-page amended complaint. ECF No. 6. Further, the Court ordered Davis to respond to Defendants' Motion for Judgment on the Pleadings, but he did not do so. ECF No. 35. Accordingly, given the extent of his amended pleading and failure to comply with the Court's Order, the undersigned concludes that Davis has pleaded his best case regarding his claims for deliberate indifference to serious medical needs and harassment, and that any further amendment would be futile.

For these reasons, the undersigned **RECOMMENDS** that Judge O'Connor **DENY** Davis' three Motions to Strike (ECF Nos. 22, 23, 24), **GRANT in PART** Defendants' Motion for Judgment on the Pleadings (ECF No. 34) as to Davis' claim for deliberate indifference to serious medical needs and harassment, **STAY** Davis' claims arising from his arrest until the underlying state criminal charges resolve, and **DISMISS WITHOUT PREJUDICE** Davis' challenges to the

constitutionality of the Texas Penal Code and the Texas Health and Safety Code, for deprivation of his right to access the state court, and for violation of the Texas Open Records Act.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). To be specific, an objection must identify the particular finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), modified by statute on other grounds, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).

**SIGNED** on October 7, 2024.

Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE

21